The fifth case for argument today is Castetter v. Dolgencorp. Mr. Macy. Thank you, Your Honor, and may it please the Court, my name is Jeff Macy, and I'm here on behalf of the appellant, Carl Castetter, who is the plaintiff below. I was listening to the previous arguments in a hypothetical or a reference to a Supreme Court case, the Amtrak case. It was recurring in the earlier oral arguments. I don't think Morgan matters to this case, however. No, except to the extent that in Morgan, they told the plaintiff, under the facts, she indicated twice, we don't hire black people, right? And then the issue is to what extent his knowledge triggers statute of limitations claims. The difficulty in employment discrimination cases is that rarely happens, and it certainly rarely happens in a situation that is litigated through the summary judgment. Oh, that didn't happen in Morgan either. Nothing was that clear. There was a defense on the merits. But as it got to the Supreme Court, only the period of limitations mattered. And the question, I think, in this case, there's a broad agreement, I think, even with Dollar General's counsel about what the legal standards are. We're in the world of Ortiz. And you're not pursuing a McDonnell-Douglas burden shifting, correct? No, no. You're pursuing strictly Ortiz. It's strictly Ortiz. In the old days, we would do it under troop, and we'd call it the forbidden term, convincing mosaic. But really, it's just putting together a series of evidence. And, you know, looking at my brief, there's a lot of evidence that we put in. You've identified, I think, nine different categories or pieces of evidence leading to the termination of your client. What's your best evidence, or can you summarize how that raises an inference that Dollar General terminated your client because of his cancer? Because that's what the ultimate issue is. Yes, Your Honor. I think if I were going to rank them here, the supervisor, Mark Hubbs' conduct towards my client, I think, throughout his employment, indicated discriminatory animus. Does it matter at all that Mr. Hubbs himself had had cancer and both his wife and son-in-law had had cancer? Well, that was his testimony. I don't think that matters. There are other cases that, you know, even members of a protected class can discriminate against other members of a protected class. The evidence in this case testified to by Mr. Kastetter was that Mr. Hubbs viewed him as a liability from the moment they met due to his cancer. And just thinking, if I'm a supervisor and I've got an obligation to my employer that depends on the performance of my employees. Wasn't he cancer-free at that time? Mr. Kastetter? Yes. At the time he was terminated? Yes.  Under the amendments to the Americans with Disabilities Act, cancer, even in remission, qualifies as a disability under the amendments to the act. And I cited, too, you know, a law review article and some EEOC guidance that I thought was somewhat persuasive, indicating the way that people stereotype or can stereotype cancer patients and the fact that cancer patients are never fully cured, or some cancer patients are never fully cured. And indeed, shortly before he was terminated, Mr. Kastetter indicated to Mr. Hubbs that he was going to be going in for periodic scans. So Mr. Hubbs, his comments to Mr. Kastetter when he met him, the evidence was that Mr. Kastetter interviewed for a job in Gary, Indiana initially, never received a call back from Mr. Hubbs. The evidence was also that Mr. Hubbs was direct. But you're not claiming that was the adverse action, correct? No. It's evidence of animus. And it's not only animus in a broader sense towards, you know, disabled people, but it's evidence that Mr. Hubbs viewed Mr. Kastetter as somehow defective. And that continued when Mr. Hubbs returned to assume direct supervision of Mr. Kastetter. He did the situation where he forced him to get down on his hands and knees and straighten out shelves and told him that he would watch him work until he dropped. The district court rejected the concept that that could be evidence of discriminatory animus based on, I think it's the Geyer case versus Medtronic. In that case, a supervisor had told a pregnant employee to get out of, I'm going to half swear, half not swear, get out of your goddamn bed and call your accounts if you want to keep your effing job. This court found that that wasn't evidence of discrimination because you can be equally rude to pregnant people and not pregnant people. In this case, though, both the comments we relied on made by Mr. Hubbs were directly referring to his disability. One, I know three people who had what you had and they're all dead. And two, that it's not just go do your job, it's I'm going to sit here and watch you work until you drop. And this is a time where Mr. Kastetter is undergoing cancer treatment. The second piece of evidence is around the termination of Mr. Kastetter. There was, Mr. Hubbs intended to terminate Mr. Kastetter before any of the policy violations that Dollar General relies on were investigated. Indeed, he intended to terminate based on performance. Dollar General asked him to put Mr. Kastetter on a performance improvement plan. And at that point, Mr. Hubbs began investigating with HR trying to determine whether policy violations had occurred. The import, of course, is that those policy violations would have justified immediate termination. The key point is that Mr. Kastetter actually did not commit those policy violations. They were committed by his subordinate and the subordinate was never disappointed for those policy violations. Wasn't he ultimately responsible for them as the general manager, though? Sure, but also Mr. Hubbs is ultimately responsible for Mr. Kastetter's performance. The question is— But the question is causation. It's causation, absolutely. But given a situation where there's somebody in your store committing a policy violation, in this case it's a violation of law, the person who's committing it isn't even disciplined, the HR supervisor conceded that she—or the HR employee conceded that she believed that Mr. Kastetter wasn't even aware that this was taking place. And again, Mr. Kastetter wasn't terminated for negligent supervision. He was terminated for a policy violation. Only the policy violation under Dollar General's procedures justified an immediate termination. I'd like to reserve the rest of my time. Certainly, Mr. Macy. Thank you. Ms. Kuchar. Good morning. May it please the Court, Mr. Macy, I'm Amanda Kuchar for the Defendant Appellee, Belgian Corp, LLC. We're referring to them as Dollar General throughout the case and in the briefs. Just to be clear, there's no harassment claim here, no retaliation, no failure to accommodate. We're just looking at whether Carl Kastetter would not have been fired but for his disability. And we believe that Chief Judge Springman was correct, that he has not identified sufficient evidence from which a reasonable jury could conclude that his employment was terminated because of his cancer. There is no dispute that his colon cancer and liver cancer are a disability. We have never disputed that, have never tried to imply that there's a dispute over that. Certainly, he's covered by the ADA. There has been some briefing back and forth about the timing of exactly when it is that Mr. Kastetter went into remission. And I think looking back at the briefs and at his testimony, I might have misused the word remission. When he returned to work in 2014, he did not have any restrictions. He did still undergo some treatments. And then in February of 2016, he was declared cancer-free. So, no restrictions in November 2014, cancer-free by February of 2016. And I apologize if I created confusion by using that word. I'd like to kind of jump forward to his last week of employment with Dollar General. At that point, Sarah Price went to a regional meeting. At the same time, she was hearing rumblings about problems in Mr. Kastetter's region. Turnover there was very high compared to what the company aims for. And then there were certain metrics in terms of training compliance that were not being met within his district. So, Ms. Price shows up to the regional meeting. And on April 27th, she meets Nakia Morales. And Nakia says, it's good to meet you. I've been hired. I've been working for the company since the 23rd. But she hasn't actually been hired. And what we have found as the kind of discovery developed in the case is that Mr. Kastetter thinks that he hired Ms. Morales on April 23rd. Her paperwork was not completed in Dollar General's. It's not paperwork. Her electronic file was not processed in Dollar General's database. And that's kind of the crux of this conflict that gets reset in multiple ways where he is the district manager over a dozen stores and hundreds of employees. He's not a data entry clerk. He's not done doing his job when he types the information into the electronic system. He's then responsible for verifying that Ms. Morales has been hired by the company, that her I-9 has been completed, and that everything is up and running so that she can be employed. So, meeting Ms. Morales was a big red flag for Ms. Price. She starts this investigation. Actually, the day that she met Ms. Morales, she recommended to her boss that Mr. Kastetter be terminated. Her boss said, nope, let's look at a PIP instead. So, Ms. Price went and drafted the PIP. Two days later, April 29th, she finds out that Eric Hayes, who is now working in a keyholder position, has not passed a background check, has not passed a drug test. Also, is not enrolled in their payroll system, so he's owed over $600. As the week goes forward, it turns out that Eric Hayes, who has been working for Dollar General for three weeks at this point, not getting paid, has stolen food from the store. Gets fired because he's been stealing food from the store. But then they have to back pay him. They have to back pay Sierra Stacey because she wasn't in the system. And Mr. Kastetter's explanation for all of this is, I told Kathy Tracy to do it. Granted, she's not the store manager of the Buffton store. She's the store manager down the street. But I told her to do it, and if it wasn't done, it's her fault. And that's not how Dollar General sees it, that if there's an absence of a store manager, you don't get to transfer the responsibilities laterally. The responsibilities go up until a new store manager is hired and put in place. There are some disputed facts listed in Mr. Kastetter's reply brief. One of the things that he focuses on is a letter that he wrote about Mr. Chupp, who was the temporary supervisor well before the termination took place. And there's a dispute over whether he actually sent this letter. It's a six-page, single-spaced letter. Did he send it to Mr. Hubs or not? Ultimately, from Dollar General's perspective, it doesn't matter, because nothing in that letter said anything about a disability, about discrimination, about retaliation. And nothing in that letter said anything similar or related to the reasons that Mr. Kastetter ultimately was fired. So the letter doesn't make Mr. Chupp a comparator, and it doesn't make him a discriminator. So if Mr. Kastetter insists that he sent the letter to Mr. Hubs, obviously we have to take that as true for today's purposes. But even at trial, I don't think that gets him anywhere. If Mr. Hubs said, I know three people who had what you have, and they are all dead, that's a terrible thing to say when somebody's just told you about their new cancer diagnosis. It is reasonable to infer that he is insensitive, to infer that he's a jerk, to infer that he's awkward. But it's not reasonable to infer, because he said that, that he plotted for a year and a half to then fire Karl Kastetter. There's not a nexus in time. There's not a nexus in motivation. There's no evidence that Mr. Hubs did or could have the authority to terminate Mr. Kastetter without Ms. Price's involvement. She wasn't part of that conversation. So, worst case scenario, Mr. Hubs knew three people who had colon cancer, and those three people died. It's not a comforting thing to say to somebody who's just been diagnosed with cancer, but it's also not an illegal thing to say. The context for the comment about, I'm going to watch you work until you drop, Mr. Hubs denies saying that, but he did admit in his deposition, yeah, I probably have told Mr. Kastetter to arrange cans on shelves. When I coach store managers about merchandising, I put them in four-foot-wide sections and show them how to front all the merchandise and have it all organized nicely and color-coded so that it's an attractive display for consumers. So, probably he did ask Karl Kastetter to do physical labor like that at some point. We also, there's no reason to think that that's discriminatory. Mr. Kastetter did not have any restrictions during the timeframe that he alleges this happened. So, there would have been, you know, he wasn't picking on him in particular. He testified that this is something that he does regularly as a trainer. We would like to emphasize the Linda Rowlands case versus United Parcel Service, UPS, that was decided last August as an example of what does count as enough to get past summary judgment when you can't satisfy McDonnell Douglas. You know, we're not going to, or you don't want to satisfy McDonnell Douglas. You don't have to use that analysis. Under Ortiz, Ms. Rowlands had multiple knee surgeries. She goes back to work. She is not allowed to, her ID is not reactivated in the system. She's not allowed to take breaks with her coworkers. She's not allowed to move her car in the middle of the night. Traditionally, people who park far away are allowed to move their cars closer to the building for safety when the earlier shift leaves. She's forbidden from doing that. She works on the first floor. The employee restroom is on the second floor. She asks if she can use the manager's restroom on the first floor. They say no. Can she ice her leg or her knee while she's at her desk? No, or at her workstation because then her coworker reports her for sitting down on the job. Can she try to ice her knee on the loading dock? Well, maybe, but then she has to sit sideways in a way that is painful to her. But she's not allowed to leave the premises. All the other employees are. She ends up getting fired because one night she's leaving the building, and she has a taser with her that she turns on on her way into the parking lot because she's going far away in the dark in a parking lot where people have been mugged before, where vagrants have been found sleeping in UPS trucks. And a coworker sees the taser and reports her for violating UPS's weapon policy. Says he feels threatened. 30-year-old bodybuilder of a coworker. After she's been carrying this taser to her car every night for 10 years. That's the standard for a pile of evidence that when we look at it all together, a reasonable jury could infer that this woman was discriminated against because of her disability. Mr. Kastetter's evidence does not add up to anything near what Ms. Rowland had and what the courts require in order for him to get to trial. So we ask respectfully that Chief Judge Springman's opinion be affirmed. Thank you. Anything further, Mr. Macy? Yes, Your Honor. There is a disputed issue of fact on this issue of who's putting in the I-9s in Dollar General's system. Mr. Kastetter alleged, and there's evidence to support, including Ms. Morales' hiring record, that this processing system for the Bluffton Road store, which is where all of this took place, was blocked because the manager had left, appointed a new assistant manager into the system, and Mr. Kastetter and anyone else was unable to access that, and that it was an ongoing problem during the, again, we're talking about a week or two-week period here. There's evidence that we submitted in connection with our brief below, and we pointed to in our brief here, that when Ms. Price, the HR employee, would direct Mr. Kastetter that there was a problem with an I-9, at another store he was able to fix it within three hours, but in this case he wasn't able to fix the I-9s at this store, and that because the system was blocked, he had delegated it to Ms. Tracy at the other store because she was able to hire employees in her computer and then assign them hours. Again, it's not just a matter of delegation and, you know, failing to oversee. Ms. Tracy was literally putting people to work without putting them in Dollar General's system. She was assigning the hours, she was telling them where to go, and she was not assuring that they would get paid. I understand the contention of Mr. Kastetter should bear some responsibility for that, if we're talking about matters of employment management, but the point is that he wasn't even aware in this brief period that this was taking place. And again, the evidence is that instead of being instructed on store turnover, larger management issues, Mr. Kastetter, the district manager for a dozen, I think as many as 16 stores, was being asked to be on his hands and knees straightening cans. From the way that he was treated by Mr. Hubbs, from that first comment all the way through the termination, and given with the evidence of the pretext, disputed issues of fact on the store policies, there's enough evidence to believe that the discriminatory animus motivated or caused the termination. Thank you. Thank you very much, counsel. The case is taken under advisement.